DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Joshua D. Moore, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order denying him temporary total disability compensation ("TTD") beginning March 3, 2004, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the commission abused its discretion in its determination to deny relator's request for TTD. Therefore, the magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate the June 25, 2004 order of its staff hearing officer's ("SHO") denying TTD compensation, and in a manner consistent with the magistrate's decision, enter a new order that adjudicates relator's request for TTD compensation.
 {¶ 3} Respondent Columbus Serum Company ("Columbus Serum") has filed the following objections to the magistrate's decision:[1]
[1.] The Magistrate erroneously rejected the Industrial Commission's determination that the medical evidence was not credible, despite the fact that questions of credibility and the weight of the evidence are within the exclusive discretion of the Commission.
[2.] The Magistrate erroneously analyzed the evidence of the two-month gap in treatment and substituted his analysis for that of the staff hearing officer's.
[3.] The Magistrate erroneously rejects the staff hearing officer's conclusion that Dr. Briggs' report is not competent evidence of retroactive TTD compensation.
[4.] The Magistrate misconstrued the staff hearing officer's observation of Mr. Moore's age and nature of his injury.
 {¶ 4} These objections, however, essentially are re-arguments of the same points addressed in the magistrate's decision.
 {¶ 5} Since the first three objections are interrelated, we will address them together. In its objections, Columbus Serum mischaracterizes the magistrate's decision. The magistrate did not conclude that the commission has no discretion to resolve questions of credibility and weight of the evidence. Rather, the magistrate concluded that the SHO's determination that Dr. Briggs is "not competent to certify the disability of this injured worker retroactive to a time before his termination," was contrary to State ex rel. Bowie v. Greater Cleveland Regional TransitAuth. (1996), 75 Ohio St.3d 458. (Magistrate Dec. at 9.) Additionally, it is important to note that the magistrate did not conclude that the commission's abuse of discretion automatically translates to a finding that Dr. Briggs' TTD certification must be accepted and the magistrate expressly stated that the determination of credibility of Dr. Briggs' certification remains with the commission. For the reasons set forth in the magistrate's decision, we do not find Columbus Serum's position well-taken. Accordingly, we overrule Columbus Serum's first three objections to the magistrate's decision.
 {¶ 6} Regarding its fourth objection, we find no error in the magistrate's determination that the SHO's analysis regarding relator's age and the nature of relator's injury crosses the line into the realm of medical expertise.
 {¶ 7} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the Magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant a writ of mandamus ordering the commission to vacate its SHO's order of June 25, 2004, that denied relator's TTD compensation, and in a manner consistent with this decision, enter a new order that adjudicates relator's request for TTD compensation.
Objections overruled; writ of mandamus granted.
Brown, P.J. and French, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
 State of Ohio ex rel. Joshua D. Moore, :
 Relator, :
 v. : No. 04AP-974
 Industrial Commission of Ohio : (REGULAR CALENDAR)
 Columbus Serum Company, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 29, 2005 Heinzerling Goodman, LLC, and Jonathan H. Goodman, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
Schottenstein, Zox Dunn Co., L.P.A., and Patrick A. Devine, for respondent The Columbus Serum Company.
IN MANDAMUS
 {¶ 8} In this original action, relator, Joshua D. Moore, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning March 3, 2004, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 9} 1. On March 2, 2004, relator sustained an industrial injury while employed as a laborer for respondent the Columbus Serum Company ("Columbus Serum"), a state-fund employer. On that date, relator injured his back when he fell backwards while lifting a heavy bag of dog food. Relator was 19 years of age on the date of his injury. The industrial claim is allowed for: "sprain thoracic region; sprain lumbar region," and is assigned claim number 04-323202.
 {¶ 10} 2. On the date of injury, relator presented at the emergency room at Doctor's Hospital. The emergency room physician wrote her impression as "[t]horacolumbar pain, status post fall." She gave relator two Vicodin and some ibuprofen and a prescription for ibuprofen and Skelaxin. She recommended a follow-up in one to two days at "WorkHealth." She declined to do x-rays.
 {¶ 11} 3. Relator did not go to WorkHealth until March 5, 2004. The WorkHealth physician took relator off work for four days and scheduled relator for a reevaluation on March 8, 2004.
 {¶ 12} 4. Relator failed to appear at WorkHealth on March 8, 2004 due to a transportation problem. The appointment was rescheduled for March 9, 2004.
 {¶ 13} 5. During the afternoon of March 9, 2004, relator was evaluated by a physician at WorkHealth who released him to return to work with restrictions of no overhead work or lifting greater than ten pounds. A follow-up appointment at WorkHealth was scheduled for March 16, 2004.
 {¶ 14} 6. Although relator had been released to return to work with restrictions in the afternoon of March 9, 2004, he did not report to work at Columbus Serum at the scheduled time that evening nor did he call off work.
 {¶ 15} 7. On March 10, 2004, relator talked to his supervisor, Randy Kloha. According to Kloha's memorandum, relator told him that he could not come to work on that day because "he had to buy parts for his truck and he had paperwork to fill out." According to the memorandum, Kloha considered relator to be terminated after the conversation.
 {¶ 16} 8. Kloha completed a "Separation Record" indicating that, effective March 10, 2004, relator was discharged due to "absenteeism."
 {¶ 17} 9. Relator failed to show at WorkHealth for his scheduled appointment of March 16, 2004.
 {¶ 18} 10. On May 3, 2004, relator was first seen by chiropractor Robert E. Briggs, D.C., for an examination. Dr. Briggs wrote:
Mr. Joshua Moore presents in my office today with chief complaints of mid back pain and stiffness along with period low back pain and stiffness. The pain began on 3/2/04 when he was working in a warehouse. He slipped on debris on the floor and fell injuring his mid and low back. Today he reports his pain is constant and graded at an 8 out of 10. The pain is constant and can be severe at times. To this point the patient has had minimal care for this injury. He has attempted to take over the counter pain medication which has not helped.
Upon evaluation, it was evident that the thoracic and lumbar paraspinal muscles where in spasm from T2-T10 and L1-L4 bilaterally. Ranges of motion were reduced by 50% in all directions and he presents with several positive orthopedic tests. Reflexes were reduced but symmetrical in all levels. Thoracic and lumbar fixations were present from T2-T10 and L1-L4.
I have started a standard chiropractic protocol with this gentleman of spinal manipulation, manual therapy and electrical stimulation at 3x week for 4 weeks. Since the patient has not had any type of manual therapy, I believe his prognosis to be very favorable.
 {¶ 19} 11. On June 1, 2004, Dr. Briggs completed a C-84 certifying TTD from March 3, 2004 to an estimated return-to-work date of August 1, 2004.
 {¶ 20} 12. On June 9, 2004, Dr. Briggs wrote:
Concerning Mr. Joshua Moore and his work related injury, Mr. Moore entered this office with chief complaints of mid back pain and stiffness as well as low back pain and stiffness. The injuries are directly related to the accident which took place on March 2, 2004 when he fell at work.
Mr. Moore has been unable to work since the date of injury. I have reviewed his treatment notes and records from other physicians whom he had seen immediately following the injury. It is my professional opinion that Mr. Moore has been unable to work since the original injury date of March 2, 2004.
 {¶ 21} 13. On June 10, 2004, relator moved for TTD compensation beginning March 3, 2004.
 {¶ 22} 14. Following a June 25, 2004 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation beginning March 3, 2004 through the hearing date and to continue upon submission of medical proof.
 {¶ 23} 15. The employer administratively appealed the DHO order of June 25, 2004.
 {¶ 24} 16. On August 31, 2004, Dr. Briggs wrote:
Mr. Moore was last seen on 8-25-04 relating to his work injury claim # 04-323202.
Mr. Moore's inability to be seen at this office on a regular basis has been due to financial and transportation problems.
Mr. Moore was seen on 8-25-04 when a re-evaluation and treatment was performed. Mr. Moore continues to have low back pain and stiffness as well as mid back pain and stiffness. His ranges of motion in the lumbar and thoracic spine were limited due to pain, stiffness and biomechanical alterations. He also presents with several positive orthopedic tests. Taught and tender thoracic and lumbar paraspinal muscles were also noted during palpation.
It is my professional opinion that Mr. Moore's condition has had limited marked improvement due to his inability to be seen as recommended.
 {¶ 25} 17. Following a September 1, 2004 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO order and denies TTD compensation. The order states:
It is the finding of the Staff Hearing Officer that the preponderance of the evidence contraindicates an award of Temporary Total Disability Compensation in the instant fact situation.
In the 08/31/2004 letter of Robert E. Briggs, D.C., upon which the injured worker seeks to rely, Dr. Briggs notes ongoing difficulties with the injured worker's transportation.
This is consistent with a[nd] supportive of the injured worker's admissions to Randy Kloha in employer's signed "Separation Record" dated 03/11/2004. The injured worker confirmed the essential point: his truck was inoperable on both 03/08/2004 and 03/10/2004.
Witness Mr. Friley testified to essentially the same fact situation and statements on the part of the injured worker.
The Staff Hearing Officer concludes, therefore, that the injured worker failed to report to work because he lacked transportation rather than because he was disabled. There is no causal nexus between his uncontested injury and the contested period of disability.
Neither the report nor the C-84 of Dr. Briggs is responsive to the protracted period of Temporary Total Disability Compensation sought when there was a two month gap in the injured worker's medical treatments. Dr. Briggs did not see the injured worker until 05/03/2004. He is simply not competent to certify the disability of this injured worker retroactive to a time before his termination.
The Industrial Commission and its hearing officers have the obligation as well as the right to scrutinize the totality of any given fact situation before awarding monetary compensation. See State ex rel. OhioTreatment Alliance v. Paasewe (2003), 99 Ohio State 3d 18.
Given this gap, moreover, counsel's reliance upon State ex rel. Bowiev. Greater Cleveland Regional Transit Authority (1996), 75 Ohio State 3d 458 is found to be misplaced. The reviewing physician in that case had access to medical reports spanning the entire period of disability in contest.
Dr. Briggs, moreover, fails to justify persuasively ongoing Temporary Total Disability Compensation in an individual twenty years of age with only soft tissue allowances. And says nothing to explain why the injured worker is disabled from any type of work, as he alleges on his C-84.
Given the ample reason to suspect Dr. Briggs' certification of disability, the Staff Hearing Officer need not address further the other aspects of his termination or the [State ex rel. Louisiana-Pacific Corp.v. Indus. Comm. (1995), 72 Ohio St.3d 401] compliance of employer's policy.
 {¶ 26} 18. On September 17, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO order of September 1, 2004.
 {¶ 27} 19. On September 24, 2004, relator, Joshua D. Moore, filed this mandamus action.
Conclusions of Law:
 {¶ 28} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 29} The main issue before the SHO was the credibility of Dr. Briggs' certification of TTD beginning the day after the date of injury when Dr. Briggs did not first examine relator until May 3, 2004, some two months after the injury date.
 {¶ 30} The SHO began his analysis by pointing out that on March 8 and March 10, 2004, relator reported that he was having transportation problems. Apparently, on March 8, 2004, relator did not make his scheduled appointment at WorkHealth due to a transportation problem. On March 10, 2004, according to the Kloha memorandum, relator refused to come to work stating that "he had to buy parts for his truck and he had paperwork to fill out."
 {¶ 31} The SHO concludes that relator failed to report to work at Columbus Serum on March 10, 2004 because he lacked transportation rather than because he was disabled. This is indeed a valid conclusion to draw from the evidence. However, that it was a transportation problem rather than the industrial injury that prevented relator from reporting to work on March 10, 2004 does not lead to the SHO's next conclusion that "there is no causal nexus between his uncontested injury and the contested period of disability."
 {¶ 32} The flaw in the SHO's analysis is his failure to recognize that on March 9, 2004, WorkHealth did not release relator to return to his former position of employment, but only released him to return to work with restrictions. Thus, the only conclusion that can be drawn from relator's March 10, 2004 conversation with Kloha is that a transportation problem prevented relator from returning to alternative employment at Columbus Serum. Because the issue before the SHO was whether relator was medically able to return to his former position of employment, State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, the transportation problem preventing him from returning to alternative employment is irrelevant.
 {¶ 33} Based upon the above analysis, that a transportation problem caused relator to miss his scheduled appointment at WorkHealth on March 8, 2004, is also irrelevant to the question of whether relator was medically unable to return to his former position of employment on March 8, 2004 or on any other date of the claimed period of disability.
 {¶ 34} The SHO was also concerned about a "two month gap" in relator's medical treatment. Relator was last examined at WorkHealth on March 9, 2004, when he was released to return to work with restrictions. Apparently, relator did not see another physician until he first visited with Dr. Briggs on May 3, 2004. Indeed, there does appear to be about a two-month period during which relator received no medical treatment from a healthcare provider.
 {¶ 35} The SHO suggests that this so-called "two month gap" is some evidence that relator was not temporarily and totally disabled. However, this suggestion does not rise to the level of a finding supported by a brief explanation and some evidence. State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, syllabus.
 {¶ 36} To begin, the SHO fails to explain why the absence of medical treatment between March 9 and May 3, 2004 is evidence that relator was able to return to his former position of employment. On March 9, 2004, WorkHealth released relator to return to work with restrictions. While relator did miss his scheduled appointment at WorkHealth on March 16, 2004, the SHO does not address this fact as being significant. The magistrate here observes that relator was not actually scheduled for medical treatment on March 16, 2004, but was scheduled for a follow-up visit on that date. Thus, relator did not refuse treatment of any sort during this two month period.
 {¶ 37} The lack of medical treatment does not always equate to a lack of disability. State ex rel. Simon v. Indus. Comm. (1994),71 Ohio St.3d 186, 188. Here, the so-called two month gap between relator's March 9, 2004 examination at WorkHealth and his May 3, 2004 examination by Dr. Briggs does not automatically equate to a lack of disability in the absence of a brief explanation supported by some evidence cited by the SHO. In short, the mere fact that there is a two month gap is not some evidence supporting the SHO's conclusion that there was no disability or that Dr. Briggs' certification lacks credibility.
 {¶ 38} Clearly, under State ex rel. Bowie v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 458, Dr. Briggs can be competent to certify TTD for the period prior to his May 3, 2004 examination if he reviewed all the relevant medical evidence generated prior to his May 3, 2004 examination, regardless of any so-called "gap" resulting from the absence of medical treatment. In his June 9, 2004 report, Dr. Briggs states:
* * * I have reviewed his treatment notes and records from other physicians whom he had seen immediately following the injury. It is my professional opinion that Mr. Moore has been unable to work since the original injury date of March 2, 2004.
 {¶ 39} In his order, the SHO finds that relator's reliance on Bowie is misplaced. The SHO states that Dr. Briggs "is simply not competent to certify the disability of this injured worker retroactive to a time before his termination." (Emphasis added.)
 {¶ 40} There is no evidence in the record to dispute Dr. Briggs' statement that he had reviewed the treatment notes and records from other physicians. Moreover, the SHO does not seem to question that Dr. Briggs reviewed all the medical evidence generated prior to May 3, 2004. The SHO seems to suggest that he simply believed that Dr. Briggs was not competent under Bowie to retroactively opine as to relator's disability because there is a two month gap in treatment during the retrospective period. Clearly, this is an improper reading of Bowie. If Dr. Briggs reviewed all the relevant medical evidence generated prior to May 3, 2004, then Dr. Briggs is competent to retrospectively opine as to disability.
 {¶ 41} The SHO also held that Dr. Briggs "fails to justify persuasively ongoing Temporary Total Disability Compensation in an individual twenty years of age with only soft tissue allowances."
 {¶ 42} It has been held that the commission lacks medical expertise and thus cannot generate its own medical findings. State ex rel. YellowFreight Sys., Inc. v. Indus. Comm. (1998), 81 Ohio St.3d 56. However, it is the commission that weighs the medical evidence before it. Weighing the medical evidence does involve questioning the medical evidence. Stateex rel. Pavis v. Gen. Motors Corp., B.O.C. Group (1992), 65 Ohio St.3d 30. Asserting that the SHO was "not free to play doctor," relator claims that the SHO, in effect, went beyond his duty to weigh and question the medical evidence, i.e., that the SHO acted as if he had medical expertise to counter Dr. Briggs' opinion.
 {¶ 43} In the magistrate's view, the SHO's analysis regarding relator's age and the nature of the injury crosses the line into the realm of medical expertise. The SHO is not competent to render his own opinion that a person of relator's age with soft tissue allowances could not have "ongoing" disability on May 3, 2004, some two months after the date of injury.
 {¶ 44} The SHO's analysis upon which he determined to reject Dr. Briggs' TTD certification is flawed in many respects as explained above. However, the SHO's failure to properly analyze the medical evidence does not automatically translate to a finding that Dr. Briggs' TTD certification must be accepted. The determination of the credibility of Dr. Briggs' certification remains with the commission.
 {¶ 45} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the June 25, 2004 order of its SHO denying TTD compensation and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates relator's request for TTD compensation.
[1] We note that respondent, the commission, has not filed any objections to the magistrate's decision.